### MORGAN and others v. BASS and others.

*(Circuit Court, D. Indiana. August 9, 1882.)*

1. LAND INCLUDED IN A CANAL—TITLE.
    The owners of a canal have a right of landing and of using the bank of the canal in a manner consistent with the rights of navigation; but if the canal is to be filled up, and not used for the purposes of navigation, the title of purchasers of such canal and its appurtenances would not extend beyond what might be regarded as the highest water line.

2. SAME—TITLE OF ABUTTING LAND-OWNERS.
    The title of owners of land abutting on a canal extends to the line of such canal, subject to the use of the bank of such canal by the canal owners for purposes of commerce and navigation.

At Law.

*Mr. Ellison* and *Mr. Ninde,* for plaintiffs.

*Mr. Taylor* and *Mr. Bell,* for defendants.

DRUMMOND, C. J. The jury found a verdict for the plaintiffs in this case, under the instructions of the court, and the defendants have made a motion for a new trial. It was an action of ejectment brought for a strip of land about 17 feet wide, more or less, lying on the canal basin, and claimed to be the northern part of lots 562 and 563 of Hanna's addition to Fort Wayne. Lots 562 and 563 were each 50 feet wide, and bounded on the east by Harrison street, on

the south by Pearl street, and on the north by the canal, or canal land. On the plat which Hanna made, and which was recorded, the depth of these lots north and south was marked as 163 feet, but the lines of the lots extended to the canal basin, and, as the court thought, and so instructed the jury, they were intended by Hanna to extend to the canal, and therefore the northern boundary of these lots was on the line of the canal, whether it was more or less than 163 feet north of Pearl street. The court did not instruct the jury that this north line was necessarily the water line of the basin, but laid down some rules to govern the jury as to the quantity of land that was covered by the canal, stating that it included the bottom, sides, and the tow-path, and any portion of the adjoining banks that were appropriated by the canal commissioners and used for the purposes of the canal, stating at the same time that as the canal was intended as a means of communication by water, it must be assumed that certain portions of its banks were to be used for the purposes of commerce, and for receiving and delivering freight along the line of the canal; and the court also stated that there was nothing in the evidence to indicate how far from the water line on the banks of the canal the right of the commissioners or owners of the canal extended, and that in those cases where no portion of the banks of the canal had been appropriated for the uses of the canal, it must be assumed that the owners of adjoining lots abutting on the canal would own their property to the canal, subject, of course, to the uses of the canal, as heretofore stated.

I can have no doubt that these instructions thus given by the court were substantially correct, and that they laid down the true rules upon the subject. The canal having ceased to be used for the purposes for which it was originally designed, it having been sold under the decree of this court under which divorce the plaintiffs claim, we had to determine the rights of the parties under the circumstances as they actually existed, and as shown by the evidence. It did not appear that along the north line of lots 562 and 563, and bordering on the canal, there had ever been any particular space appropriated by the canal commissioners, or by the state when it was the owner of the canal, for the uses of the canal. On the contrary, it appeared that the parties through whom the plaintiffs claim had to some extent— how far it was left to the jury to determine—exercised exclusive control and ownership over the land in controversy, and therefore there was no question growing out of any appropriation of the land by the canal commissioners, or the state, independent of what might be considered indispensable on the bank of the canal.

It is objected by the defendants that a deed which was made by the sheriff, conveying the north 25 feet of lots 562 and 563 of Hanna's addition, constitutes a breakage in the chain of title of the plaintiffs, and defeats the claim made by them of a possession of 20 years under their title.

The ground taken by the court in its instructions to the jury was that this deed conveyed the land in controversy, because the north 25 feet of these two lots would necessarily include all the land upon them up to the limits of the canal, and that proceeded upon the basis that Hanna's plat, as recorded, clearly showed that the lines running north and south did extend to the canal, and therefore the figures marked upon the lines as 163 feet were not conclusive as to the length of those lines. It would have been the same, precisely, as though there had been a conveyance made of the whole of the lots. The northern boundary would then have been on the line of the canal, whether land or water.

It is claimed there has been some evidence recently discovered which would have a bearing on the case, and which is adduced as an additional reason for the granting of a new trial, and that is a contract made between the state and one Charles Bellair, of the tenth of November, 1837, under which a portion of the Wabash & Erie canal was to be constructed. It is not claimed that this contract covered any portion of the ground or the lines in controversy in this case, but it is said that this was similar to other contracts that were made in relation to the construction of the canal. This is simply the statement of counsel, and there seems to be no independent proof of the fact. It is therefore not necessary to consider what would be the effect of such a contract if applied to the land which is the subject of controversy in this case.

The difficulty on the part of the defendants as the purchasers of the canal under the decree of this court consists in this: that there is no satisfactory evidence indicating how far their ownership would extend on the bank beyond the water line. The real contest in this case between the parties is, who shall own the dry land south of the water line, and up to the line running east and west, which is 163 feet north of Pearl street? The jury have found that there never has been any appropriation of this land by the proprietors of the canal. They have found for the plaintiffs generally, but it is not to be understood by this that, if the canal is to remain a water-course, and to be used for the purposes of commerce or navigation, that those who own it are to be deprived of all those rights which are applicable to such a

use of the canal. They would have the right, consequently, of landing, and of using the bank of the canal in a manner consistent with the rights of navigation; but it would also follow that if the canal is to be filled up and not used for the purposes of navigation, and the bed of the canal is to become dry land, then the rights of the defendants as purchasers of the canal, and its appurtenances, would not extend south of what might be regarded as the highest water line. In other words, because they were owners of the canal, and it had ceased to be such, they could not be permitted to extend their rights over the adjoining banks, and include the land of owners abutting upon the canal.

The motion for a new trial will, therefore, be overruled.